# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

EDWARD SWEENEY, Individually and
on Behalf of all Other Persons Similarly
Situated,

      Plaintiff,

      v.

BED BATH & BEYOND INC.,

      Defendant.

Civil Action: 2:16-cv-01927

ORAL ARGUMENT
REQUESTED

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Gregory T. Parks (*pro hac vice pending*)
Kristin M. Hadgis
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA  19103-2921
(215) 963-5000

-and-

Christopher Iannicelli
MORGAN, LEWIS & BOCKIUS LLP
502 Carnegie Center
Princeton, NJ 08540-6241
(609) 919-6600

# **TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................1

II.   STATEMENT OF FACTS ...................................................................5

III.  PLEADING STANDARDS ..................................................................8

     A.   Federal Rule of Civil Procedure 12(b)(1) ...............................8

     B.   Federal Rule of Civil Procedure 12(b)(6) ...............................8

     C.   TCCWNA Pleading Requirements ......................................9

IV.  ARGUMENT......................................................................................11

     A.   Plaintiff Has Not Alleged an Injury In Fact to Meet the
           Standing Requirements of Article III ...................................11

     B.   The TCCWNA Does Not Apply Because Terms of Use Are
           Governed by New York Law ...............................................15

     C.   Plaintiff Lacks Statutory Standing Under the TCCWNA
           Because He Is Not an Aggrieved Consumer...........................17

     D.   Plaintiff's TCCWNA Claim Fails Because the Bed Bath &
           Beyond Terms of Use are Not a Consumer Contract or Notice.........21

     E.   Plaintiff Has Not Plausibly Alleged that Bed Bath & Beyond's
           Terms of Use Violate a Clearly Established Legal Right .................23

          1.   Because the Terms of Use do not govern the sale of
                 products, New Jersey Products Liability Law and the
                 Uniform Commercial Code are inapplicable ...........................25

          2.   New Jersey law on a business owner's  duty of care to
                 provide a safe physical environment is inapplicable to the
                 virtual world ........................................................27

          3.   FTC and FCC guidelines do not create clearly established
                 legal rights relating to cyberliability .......................29

          4.   The law governing the enforceability of exculpatory
                 clauses is not clearly established...............................30

     F.   Bed Bath & Beyond's Terms of Use Cannot Violate the
           TCCWNA Because They Apply Only to the Extent Permitted
           by Law .................................................................33

     G.   The Terms of Use Do Not Violate Section 16 of the TCCWNA ......34

i

V.    CONCLUSION...............................................................................................36

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Asch Webhosting, Inc. v. Adelphia Bus. Sols. Inv., LLC*,
   362 F. App'x 310 (3d Cir. 2010) ........................................................31

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).........................................................................8, 9

*Baker v. Inter Nat. Bank*,
   No. 08-5668, 2012 WL 174956 (D.N.J. Jan 18, 2012) ......................18

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007).........................................................................8, 9

*Castro v. Sovran Self Storage, Inc.*,
   114 F. Supp. 3d 204 (D.N.J. 2015)....................................................36

*Cohen v. Kurtzman*,
   45 F. Supp. 2d 423 (D.N.J. 1999).......................................................8

*Dayhoff Inc. v. H.J. Heinz Co.*,
   86 F.3d 1287 (3d Cir. 1996) ...............................................................8

*Designer License Holding Co., v. Res. Club, Ltd.*,
   No. A-2526-08T2, 2009 WL 4251140 (N.J. Super. Ct. App. Div.
   Nov. 24, 2009) ...................................................................................31

*Dugan v. TGI Friday's, Inc.*,
   No. A-3098-10T2, 2011 WL 5041391 (N.J. Super. Ct. App. Div.
   Oct. 25, 2011) ....................................................................................19

*Dugan v. TGI Fridays, Inc.*,
   --- A.3d ---, 2016 WL 1136486 (N.J. Super. App. Div. Mar. 24,
   2016) ..................................................................................................19

*Ex parte Van Winkle*,
   70 A.2d 167 (N.J. 1950) .....................................................................17

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
   528 U.S. 167 (2000)...................................................................................12

*General Motors Corp. v. New A.C. Chevrolet, Inc.*,
   263 F.3d 296 (3d Cir. 2001) .....................................................................15

*Gershon v. Regency Diving Ctr., Inc.*,
   845 A.2d 720 (N.J. Super. Ct. App. Div. 2004) ...........................................30, 31

*Hollingsworth v. Perry*,
   133 S. Ct. 2652 (2013)...............................................................................11

*Hopkins v. Fox & Lazo Realtors*,
   625 A.2d 1110 (N.J. 1993) .........................................................................28

*Howard Sav. Inst. v. Peep*,
   170 A.2d 39 (N.J. 1961) .............................................................................18

*Kane v. U-Haul Int'l. Inc.*,
   218 F. App'x 163 (3d Cir. 2007) ................................................................31

*Kent Motor Cars, Inc. v. Reynolds & Reynolds Co.*,
   25 A.3d 1027 (N.J. 2011) .............................................................................9

*Lee v. Am. Express Travel Related Servs.*,
   No. 07-4765, 2007 WL 4287557, at *2, 5 (N.D. Cal. Dec. 6, 2007) ................14

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992)...................................................................................11

*Marinczyk v. New Jersey Police Training Com'n*,
   5 A.3d 785 (N.J. 2010) ...............................................................................28

*Martinez-Santiago v. Public Storage*,
   38 F. Supp. 3d 500, 504, 515-16 (D.N.J. 2014) ......................................19, 28, 32

*McGarvey v. Penske Auto Group, Inc.*,
   486 F. App'x 276 (3d Cir. 2012) ................................................................23

*McGarvey v. Penske Automotive Group, Inc.*,
   No. 08-5610, 2011 WL 1325210 (D.N.J. Mar. 31, 2011) ............................23, 24

iv

*Miller v. Samsung Elecs. Am., Inc.*,
    No. 14-4076, 2015 WL 3965608 (D.N.J. June 29, 2015) ..................................16

*Mortensen v. First Fed. Sav. and Loan Ass'n*,
    549 F.2d 884 (3d Cir. 1977) .......................................................................8

*N. Bergen Rex Transp., Inc. v. Trailer Leasing Co.*,
    730 A.2d 843 (N.J. 1999) ..........................................................................15

*Paruta v. Public Storage*,
    No. SOM-DC-001704-2013 (Super. Ct. Law Div. Special Civ. Pt.
    June 19, 2013)..........................................................................................32

*Phillips v. Cty. of Allegheny*,
    515 F.3d 224 (3d Cir. 2008) .......................................................................9

*Prescription Counter v. AmerisourceBergen Corp.*,
    No. 04-5802, 2007 WL 3511301 (D.N.J. Nov. 14, 2007)..................................15

*Sauro v. L.A. Fitness Int'l, LLC*,
    No. 12-3682, 2013 WL 978807 (D.N.J. Feb. 13, 2013)....................................34

*Schunkewitz v. Prudential Sec. Inc.*,
    99 F. App'x 353, 355 (3d Cir. 2004) ............................................................15

*Shah v. Am. Express Co.*,
    No. 09-0622, 2009 WL 3234594 (D.N.J. Sept. 30, 2009).....................12, 13, 20

*Shelton v. Restaurant.com, Inc.*,
    70 A.3d 544 (N.J. 2013) ......................................................................21, 28

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2016).......................................................................passim

*Steel Co. v. Citizens for Better Env't*,
    523 U.S. 83 (1998)....................................................................................12

*Stelluti v. Casapenn Enters., LLC*,
    1 A.3d 678 (N.J. 2010) ..............................................................................31

*Tessler & Son, Inc. v. Sonitrol Sec. Sys. of N. N.J.*,
    497 A.2d 530 (N.J. Super. Ct. App. Div. 1985) ..............................................31

*Venditto v. Vivint, Inc.*,
   No. 14-4357, 2015 WL 926203 (D.N.J. Mar. 2, 2015) ...............................32, 35

*Walters v. Dream Cars Nat'l LLC*,
   No. BER-L-9571, 2016 WL 890783 (N.J. Sup. Ct. Law Div. Mar.
   8, 2016) ..........................................................................................passim

*Watkins v. DineEquity, Inc.*,
   591 F. App'x 132 (3d Cir. 2014) ...........................................................9, 10, 11

*Wilson v. Kia Motors Am., Inc.*,
   No. 13-1069, 2015 WL 3903540 (D.N.J. June 25, 2015) ...........................23, 30

**STATUTES**

N.J.S.A. § 56:12-1 .............................................................................................21

N.J.S.A. § 56:12-15 ....................................................................................passim

N.J.S.A. § 56:12-16 ....................................................................................passim

N.J.S.A. § 56:12-17 ......................................................................................10, 17

**OTHER AUTHORITIES**

Fed. R. Civ. P. 12(b)(1) .......................................................................................8

Fed. R. Civ. P. 12(b)(6) .......................................................................................8

Restatement (Second) of Conflict of Law § 187, cmt. f (1971) ............................16

U.S. Const. art. III .......................................................................................2, 11, 14

Defendant Bed Bath & Beyond Inc. ("Bed Bath & Beyond") respectfully submits this Memorandum of Law in support of its Motion to Dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of standing sufficient to confer subject matter jurisdiction and Rule 12(b)(6) for failure to state a claim upon which relief may be granted. Plaintiff purports to bring a claim under the New Jersey Truth-in-Consumer Contract, Warranty and Notice Act, N.J.S.A. § 56:12-14 *et seq.* (the "TCCWNA"). But even assuming the TCCWNA applies to Terms of Use governed by New York law, it only allows an "aggrieved consumer" to seek a remedy for a violation of a "clearly established" consumer right. Here, Plaintiff is not an aggrieved consumer and has not demonstrated that Bed Bath & Beyond has committed any violation, let alone a violation of a "clearly established" consumer right.

## I.    INTRODUCTION

Plaintiff Edward Sweeney ("Plaintiff") filed this putative class action alleging that Bed Bath & Beyond's website Terms of Use violate the TCCWNA. The TCCWNA does not create any new consumer rights; it merely allows for enforcement of other laws if three elements are met: (1) an "aggrieved consumer" can bring an action; (2) for a "consumer contract" offered by a seller of consumer products; that (3) violates some legal right that is "clearly established" by other law. Here, Plaintiff cannot meet any of the three elements.

First, Plaintiff does not allege that he has suffered any harm.  He therefore lacks standing under Article III of the U.S. Constitution and is not an "aggrieved consumer" under the TCCWNA as a matter of New Jersey statutory law.  Plaintiff does not allege any injury or harm caused by the Terms of Use and in fact, he never alleges that he or any putative class member actually viewed the Terms of Use or that Bed Bath & Beyond ever attempted to enforce them.  In particular, Plaintiff attacks the fact that Bed Bath & Beyond's Terms of Use limit certain warranties and remedies available to Plaintiff.  Of course, a warranty or limitation of remedy only comes into play if there is some problem with a product or service and a consumer needs to seek a resolution through a warranty or other remedy.  Here, Plaintiff does not even allege that he had some problem with any product or service.  He certainly does not allege that he tried to take advantage of a warranty or other remedy.  Given that, he certainly cannot allege that Bed Bath & Beyond actually tried to apply the allegedly illegal disclaimers of warranties or limitations of remedy against him.  Rather than attempt to allege any such thing, Plaintiff relies on the existence of a $100 statutory penalty in the TCCWNA.  From a federal Constitutional perspective, the U.S. Supreme Court recently re-emphasized in *Spokeo, Inc. v. Robins* that in the absence of "concrete injury," a bare allegation

of a statutory violation is not sufficient to confer standing, even if the statute in question provides statutory penalties like the ones Plaintiff points to in TCCWNA.

Second, the Terms of Use make clear that they are governed by New York law. This choice-of-law provision, which is enforceable in New Jersey, means that the TCCWNA does not apply and Plaintiff's claims must be dismissed.

Third, Plaintiff cannot satisfy the three requirements to state a TCCWNA claim. In terms of state statutory standing, the TCCWNA applies only to an "aggrieved consumer." The New Jersey Supreme Court has held that an "aggrieved" person is only one whose "personal or pecuniary interests or property rights have been **injuriously** affected." Given Plaintiff's lack of injury, he is not an aggrieved consumer and fails to meet that requirement.

Next, the Terms of Use at issue here are not a "consumer contract." The New Jersey Supreme Court has held that a "consumer contract" for purposes of the TCCWNA is one in which "an individual purchases real or personal property" for personal, family or household purposes. Here, the Terms of Use at issue by their very terms govern the Plaintiff's use of the Bed Bath & Beyond website, not any purchase of any product from the website.

Finally, Plaintiff cannot and does not identify a single "clearly established" law or legal principle that the Terms of Use for Bed Bath & Beyond's website

violate.  Plaintiff makes eloquent and creative arguments about why the law ought to be a certain way and how the Court should recognize certain new principles of law.  For example, Plaintiff argues that principles about a retailer's obligation to maintain a safe physical shopping environment in its stores should be extended to online websites.  This is an interesting idea, and Plaintiff gets points for creativity, but that is not what the TCCWNA is about.  The TCCWNA is only intended to create a remedy to prevent violations of "clearly established" rights.  Courts have found that "clearly established" rights are those where "no reasonable vendor could fail to know that its conduct was prohibited."   Despite the fact that online ecommerce websites have existed and had terms of use like those at issue here since the late 1990s, Plaintiff cannot cite a single case saying that terms of use like those at issue here are a "clearly established" violation of applicable law.  Where the violation of a right is unclear, the right is not "clearly established" and the court must dismiss a TCCWNA action.  That is certainly the case here.  Moreover, the Terms of Use themselves make clear that if there is any provision that would violate state law, that provision is not applicable.  Thus, even if Plaintiff is correct that some provision violates New Jersey law, it is then not applicable.

For these reasons, Bed Bath & Beyond respectfully requests the Court dismiss Plaintiff's Complaint with prejudice.

## II.    STATEMENT OF FACTS

Bed Bath & Beyond is a parent corporation to a group of subsidiaries that operates retail stores under the names Bed Bath & Beyond, Christmas Tree Shops and That!, Harmon and Harmon Face Values, buybuy Baby and Cost Plus and Cost Plus World Market.  (Compl. ¶ 5.)  Each of these stores offers consumer products for sale in-store and online.  (*Id.* ¶¶ 5, 6)  Plaintiff's allegations specifically relate to the Bed Bath & Beyond website, www.bedbathandbeyond.com (the "Website").  (*Id.* ¶ 6.)  Plaintiff Edward Sweeney is a Connecticut resident who claims to have purchased various unidentified consumer products through the Website "recently and during the past 6 years."  (*Id.* ¶¶ 3, 4.)

Use of the Website is governed by Terms of Use, which are available at http://www.bedbathandbeyond.com/store/static/TermsOfUse   (Compl.,   Ex.   1.) These Terms of Use relate exclusively to a visitor's use of the Website.  (*Id.*) ("**By using this Site**, you agree to accept these terms and conditions, so please be sure to read them carefully. If you do not agree with our terms and conditions, please do not use our Site."); *id.* ("[W]e need to point out to you some legal rules of the road as they apply **to your visit here and use of our Site**.") (emphasis added).  The bolded headings used throughout the Terms of Use further emphasize and make clear that the Terms apply solely to use of the Website.  For example, there are sections on:  (1) "**User Information**" which addresses Bed Bath & Beyond's use

of information provided by the Website visitor;   (2) "**Accessibility**" which addresses the Website's functionality and the visitor's ability to use the Website; (3) "**Restrictions on Use of the Materials on Our Web Site**" which addresses intellectual property rights and restrictions for trademarks and other content on the Website; (4) "**Wedding and Gift Registry, Bridal Toolkit; User Generated Content**" which sets forth the user's responsibility for content submitted via the wedding and gift registry and the bridal toolkit as well as Bed Bath & Beyond's right to use that content; and (5) "**Prohibited Conduct**" which addresses a visitor or user's inappropriate use of the Website.  (Declaration of Christopher Iannicelli (hereinafter "Iannicelli Decl."), Ex. A). [1]

On April 6, 2016, Plaintiff filed a purported Class Action Complaint against Bed Bath & Beyond alleging that the Terms of Use violate Section 15 (Count I) and Section 16 (Count II) of the TCCWNA.  (Compl. ¶¶ 72-94.)  The Complaint alleges that the Terms of Use, and in particular, provisions limiting liability and disclaiming warranties relating to the Website, violate a host of laws that have never been applied to online website terms of use.  Plaintiff proceeds to weave together a patchwork of laws ranging from the New Jersey Products Liability Act

---

[1] The Terms of Use contained in Exhibit 1 of Plaintiff's Complaint appear to be incomplete.  Bed Bath & Beyond has attached a complete copy of its Terms of Use as Exhibit A to the Iannicelli Declaration and references the language that appears therein throughout this Memorandum.

to Federal Trade Commission guidance on data security to make creative arguments inviting the Court to create new law about ways in which the Terms of Use should be found to be in violation.  (*Id.* ¶¶ 17-54.)  Nowhere in this journey, however, does Plaintiff cite a single case in which Terms of Use for an ecommerce website with limitations of warranties or liabilities are found to be a violation of any applicable law.  Nonetheless, Plaintiff seeks to represent "[a]ll individual consumers to whom were offered, given, displayed or entered into the 'Terms of Use' on Defendant's website, www.bedbathandbeyond.com, during the applicable statute of limitations through the date of final judgment in this action."  (*Id.* ¶ 60.)  Plaintiff contends that he and each member of the putative class are entitled to $100 in civil penalties for each alleged violation of the TCCWNA and asks this Court for an order "terminating" the Terms of Use provisions that purportedly violate the TCCWNA.  (*Id.*, Demand/Prayer for Relief.)

Noticeably absent from Plaintiff's Complaint are any allegations that (1) he has ever viewed the online Terms of Use; (2) he ever had any problem with the Bed Bath & Beyond Website or anything he purchased from the Website; (3) Bed Bath & Beyond has ever attempted to enforce any of the provisions of the Terms of Use against him; or (4) he or any putative class member has suffered any injury or harm arising out of any alleged website use or any product purchased from it.

## III.   PLEADING STANDARDS

### A.   Federal Rule of Civil Procedure 12(b)(1)

A Rule 12(b)(1) motion to dismiss "'attack[s] the existence of subject matter jurisdiction. . . . '"   *Cohen v. Kurtzman*, 45 F. Supp. 2d 423, 428 (D.N.J. 1999) (quoting *Mortensen v. First Fed. Sav. and Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)).   Unlike a motion under 12(b)(6), "no presumptive truthfulness attaches to the allegations of a plaintiff." *Id.*   "The party seeking to invoke Federal jurisdiction must proffer 'affidavits or other competent evidence [indicating] that jurisdiction is proper.'"   *Id.* at 430 (alterations in original) (quoting *Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3d Cir. 1996)).   Moreover, "[w]hen subject matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff must bear the burden of persuasion." *Id.* at 429 (citation omitted)*.*   Unless affirmatively demonstrated, "a Federal court is presumed to lack subject matter jurisdiction." *Id.*

### B.   Federal Rule of Civil Procedure 12(b)(6)

A motion to dismiss under Rule 12(b)(6) must be granted where the complaint fails to allege facts sufficient to establish each element of a claim. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-80 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).   To survive a motion to dismiss, the complaint's allegations must rise above the "speculative," "conceivable," or "possible," and instead must "state a claim to relief that is plausible on its face." *Twombly*, 550

U.S. at 547, 555, 563, 570; *see also Iqbal*, 556 U.S. at 678 (explaining that plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully"); *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234-35 (3d Cir. 2008) (explaining that factual allegations must "'raise a reasonable expectation that discovery will reveal evidence of' the necessary element" to justify advancement "beyond the pleadings") (citation omitted).  A complaint must include more than "labels and conclusions . . . a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.  Thus, while well-pleaded allegations of fact are accepted as true, legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not.  *Iqbal*, 556 U.S. at 678.

## C.    TCCWNA Pleading Requirements

The TCCWNA is a consumer protection statute enacted thirty-five years ago to "prevent deceptive practices in consumer contracts by prohibiting the use of illegal terms or warranties in consumer contracts."  *Watkins v. DineEquity, Inc.*, 591 F. App'x 132, 134 (3d Cir. 2014) (citing *Kent Motor Cars, Inc. v. Reynolds & Reynolds Co.*, 25 A.3d 1027, 1044 (N.J. 2011)).  The TCCWNA does not establish any new consumer rights or impose additional obligations on sellers, but instead provides a remedy for violations of rights "'clearly established'" by other laws.  *Id.* (citation omitted).  Any person who violates the TCCWNA is "liable to an

aggrieved consumer for a civil penalty of not less than $100.00. . . ."  N.J.S.A. §

56:12-17.

Plaintiff's Complaint relies on two provisions of the TCCWNA.   First,

N.J.S.A. § 56:12-15, which provides that:

> No seller . . . shall in the course of his business offer to any consumer
> or prospective consumer or enter into any written consumer contract
> or display any written . . . notice or sign   . . . which includes any
> provision that violates any clearly established legal right of a
> consumer or responsibility of a seller . . . as established by State or
> Federal law at the time the offer is made or the consumer contract is
> signed or . . . notice or sign is given or displayed.

And second, N.J.S.A. § 56:12-16, which provides that:

> No consumer contract, notice or sign shall state that any of its
> provisions is or may be void, unenforceable or inapplicable in some
> jurisdictions without specifying which provisions are or are not void,
> unenforceable or inapplicable within the State of New Jersey;
> provided, however, that this shall not apply to warranties.

To state a claim under the TCCWNA, Plaintiff must plausibly allege that:

(1) he is an "aggrieved consumer;" (2) Bed Bath & Beyond is a seller; (3) Bed

Bath & Beyond offered Plaintiff a consumer contract or notice; and (4) the contract

contained a provision that violated a clearly established legal right (under § 56:12-

15), or a provision stating it may not be enforceable in some jurisdictions without

specifying its applicability within New Jersey (under § 56:12-16).  *Watkins*, 591 F.

App'x at 134.

As discussed below, not only does Plaintiff lack standing to bring his claims in federal court but he also has failed to allege facts that meet these requirements, namely that (a) he is an "aggrieved consumer;" (b) the Terms of Use are a "consumer contract;" and (c) the Terms of Use violate "clearly established legal rights."

## IV.   ARGUMENT

### A.   Plaintiff Has Not Alleged an Injury In Fact to Meet the Standing Requirements of Article III

As a threshold matter, Plaintiff lacks Article III standing to pursue his claims because he does not allege that he suffered any harm as a result of Bed Bath & Beyond's alleged conduct. *See Spokeo, Inc. v. Robins,* 136 S. Ct. 1540 (2016). In order for an Article III court to consider the merits of a case, the "party invoking the power of the court" must "have 'standing.'" *Hollingsworth v. Perry*, 133 S. Ct. 2652, 2667 (2013) (citation omitted). The "irreducible constitutional minimum" of standing in federal court includes the following three requirements: (1) the plaintiff must have suffered an injury in fact; (2) the injury in fact is fairly traceable to the challenged conduct of the defendant; and (3) the injury is likely to be redressed by a favorable judicial decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 589 (1992) (citation and internal quotation marks omitted). Plaintiff bears the burden of alleging facts to satisfy each of these elements.

The "first and foremost" of Article III's standing requirements is injury in fact. *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 103 (1998). The United States Supreme Court's recent decision in *Spokeo, Inc. v. Robins* makes clear that to establish an injury in fact, plaintiffs must allege an injury that is both "concrete *and* particularized." *Spokeo*, 136 S.Ct. at 1545 (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000)). In *Spokeo*, the Supreme Court explained:

> Injury in fact is a constitutional requirement, and it is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing.

> To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is **concrete and particularized** and actual or imminent, not conjectural or hypothetical.

*Id*. at 1547-48 (emphasis added) (internal citations and quotations omitted). Plaintiff here fails to meet both the concrete and particularized requirements.

An injury is "particularized" where it "affect[s] the plaintiff in a personal and individual way." *Id*. at 1548 (citations omitted). Here, Plaintiff alleges only that he and the purported class members (1) "purchased consumer products from Defendant's website and/or were prospective consumers[2] otherwise displayed

---

[2] Plaintiff's claim on behalf of prospective consumers is outside the scope of the TCCWNA. *See Shah v. Am. Express Co.*, No. 09-0622, 2009 WL 3234594, at *3

and/or offered the 'Terms of Use' on Defendant's website" (Compl. ¶ 12) and (2) "Defendant's 'Terms of Use' purport to deprive Plaintiffs of their legal rights" (*id.* ¶ 14.)  These allegations fail to show how the allegedly offending provisions of the Terms of Use affected Plaintiff "in a personal and individual way."  For example, nowhere does the Complaint allege that Plaintiff actually read the Terms of Use, that Bed Bath & Beyond actually attempted to enforce any of the allegedly offending provisions in the Terms of Use against him, or that he was otherwise harmed in any way.

Plaintiff similarly fails to meet the additional requirement that his alleged "injury" be concrete.  A "'concrete' injury must be 'de facto'; that is, it must actually exist." *Spokeo*, 136 S. Ct. at 1548.  But Plaintiff alleges no injury at all. Instead, he merely states that Bed Bath & Beyond violated a statute and that he and the putative class are entitled to civil penalties as a result.  Plaintiff made this allegation before *Spokeo* was decided and was clearly intending to rely upon the existence of the $100 statutory penalty provision to provide standing.  The Supreme Court, however, made very clear in *Spokeo* that allegations of a statutory violation alone, without some actual concrete resulting harm to the Plaintiff, are

---

(D.N.J. Sept. 30, 2009) ("[L]iability under TCCWNA only attaches for the creditor when there are actual 'aggrieved' consumers.  There is no language in the statute to indicate that the legislature intended to expand the scope of liability and create a remedy for 'aggrieved prospective consumers.'").

insufficient to establish an injury in fact even if there are statutory penalties available.  As the High Court explained:

> Congress' role in identifying and elevating intangible harms does not mean that plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.  Article III standing requires a concrete injury even in the context of a statutory violation.  For that reason, [plaintiff] **could not**, for example, **allege a bare procedural violation**, divorced from any concrete harm, **and satisfy the injury-in-fact requirement** of Article III.

*Id.* at 1549 (emphasis added) (internal citation omitted).  Moreover, Plaintiff's claim here rests on the mere fact that the Terms of Use exist.  But concrete harm as contemplated by the injury in fact requirement does not arise from words that "are just 'out there' and have not had any recognizable impact on plaintiffs."  *Lee v. Am. Express Travel Related Servs.*, No. 07-4765, 2007 WL 4287557, at *2, 5 (N.D. Cal. Dec. 6, 2007) (dismissing plaintiffs' state-law consumer protection claim for lack of standing where plaintiffs argued that "they were damaged by the mere existence of the allegedly unconscionable terms . . . [b]ut those terms have not been implicated in any actual dispute between the parties").  Accordingly, because Plaintiff has failed to allege an injury in fact, the Court should dismiss his claims without leave to amend for lack of subject matter jurisdiction.

**B.     The TCCWNA Does Not Apply Because Terms of Use Are Governed by New York Law**

The Terms of Use expressly provide that they "shall be governed by and interpreted according to the laws of the State of New York." (Iannicelli Decl., Ex. A at 3.)  Choice-of-law provisions in contracts such as the Terms of Use are recognized and enforced in New Jersey.  *See Schunkewitz v. Prudential Sec. Inc.*, 99 F. App'x 353, 355 (3d Cir. 2004) ("New Jersey conflict of laws principles clearly recognize the validity and enforceability of choice-of-law provisions in contracts") (citation omitted).  Specifically, a choice-of-law provision is enforced where the contract bears some reasonable relation to the chosen jurisdiction and the chosen law does not offend the public policies of New Jersey.  *See General Motors Corp. v. New A.C. Chevrolet, Inc.*, 263 F.3d 296, 331 n.21 (3d Cir. 2001); *see also N. Bergen Rex Transp., Inc. v. Trailer Leasing Co.,* 730 A.2d 843 (N.J. 1999) ("Ordinarily, when parties to a contract have agreed to be governed by the laws of a particular state, New Jersey courts will uphold the contractual choice if it does not violate New Jersey's public policy.")

Here, because Bed Bath & Beyond is incorporated in New York, the contractual choice-of-law provision bears a reasonable relation to New York as the chosen jurisdiction.  *See Prescription Counter v. AmerisourceBergen Corp.*, No. 04-5802, 2007 WL 3511301, at * 10 (D.N.J. Nov. 14, 2007) (the chosen law will

be held to have had a reasonable basis for choice when, for example, the selected state is that where "one of the parties is domiciled or has his principal place of business") (quoting Restatement (Second) of Conflict of Law § 187, cmt. f (1971)). Moreover, application of New York law does not offend the public policies of New Jersey because New York's consumer protection laws also provide avenues of relief for injuries caused by consumer products or transactions.  Accordingly, the contractual choice-of-law provision in the Terms of Use should be enforced and Plaintiff's claims under the New Jersey TCCWNA must be dismissed. *See Miller v. Samsung Elecs. Am., Inc.*, No. 14-4076, 2015 WL 3965608, at *11-12 (D.N.J. June 29, 2015) (dismissing TCCWNA claim because Florida law applied to dispute and TCCWNA claim exists only under New Jersey law).

Alternatively, even if New York law does not apply as a matter of agreement, Plaintiff's claims still must be dismissed.  Plaintiff is a Connecticut resident who used the Bed Bath & Beyond Website from Connecticut and made a purchase on that Website from Connecticut from a New York corporation.  New Jersey bears no relation at all to this alleged transaction and, therefore, Plaintiff cannot invoke New Jersey law.

### C.     Plaintiff Lacks Statutory Standing Under the TCCWNA Because He Is Not an Aggrieved Consumer

Even if the TCCWNA applies to the Terms of Use, Plaintiff fails to meet the standing requirement set forth by the TCCWNA—namely, that he is an "aggrieved consumer" within the meaning of the TCCWNA.  Section 17 of the TCCWNA confers a private right of action, but only on an "aggrieved consumer" to enforce the TCCWNA, and states in relevant part:

> Any person who violates the provisions of this act shall be liable to **the aggrieved consumer** for a civil penalty of not less than $100.00 or for actual damages, or both at the election of the consumer, together with reasonable attorney's fees and court costs.  This may be recoverable by the consumer in a civil action in a court of competent jurisdiction or as part of a counterclaim by the consumer against the seller, lessor, creditor, lender or bailee or assignee of any of the aforesaid, who **aggrieved** him.

N.J.S.A. § 56:12-17 (emphasis added).  The TCCWNA thus limits the class of individuals who may bring a cause of action under the statute to consumers "aggrieved" by a TCCWNA violation.

Although the statute does not define aggrieved consumer, New Jersey courts and courts interpreting New Jersey law have defined an "aggrieved" person as an individual "whose personal or pecuniary interests or property rights, have been **injuriously affected**"  *Ex parte Van Winkle*, 70 A.2d 167, 174 (N.J. 1950) (emphasis added) (citation omitted) (adopting definition of aggrieved person and finding guardians who appealed discharge of their ward from mental hospital were

aggrieved by the discharge for purposes of bringing appeal because guardians were "charged with the [ward's] care and safekeeping."); *see also Howard Sav. Inst. v. Peep*, 170 A.2d 39, 41 (N.J. 1961) (stating that "[i]t is the general rule that to be aggrieved a party must have a personal or pecuniary interest or property right adversely affected" and concluding that executor of estate satisfied definition in appealing lower court's interpretation of will because executor had an interest in ensuring that the estate was distributed in accordance with the testator's wishes).

In the TCCWNA context, courts have held that only "aggrieved consumers" may bring a claim under the TCCWNA.  *See, e.g., Baker v. Inter Nat. Bank*, No. 08-5668, 2012 WL 174956, at *9-10 (D.N.J. Jan 18, 2012) (finding plaintiff was not an aggrieved consumer and dismissing claim for lack of standing because the gift card plaintiff used with a maintenance fee that allegedly violated the TCCWNA was purchased by his mother); *Walters v. Dream Cars Nat'l LLC*, No. BER-L-9571, 2016 WL 890783, at *6 (N.J. Sup. Ct. Law Div. Mar. 8, 2016) ("In spite of TCCWNA's expansive protections, the Legislature intended the TCCWNA only target those vendors that engage in a *deceptive* practice and sought to only punish those vendors that in fact deceived the consumer, causing harm to the consumer.").

Moreover, a plaintiff can only adequately plead a violation of the TCCWNA by including allegations that the allegedly illegal provision in the consumer contract was actually enforced against and adversely affected the plaintiff, thus satisfying the aggrieved consumer standard.   For example, in *Dugan v. TGI Friday's, Inc.*, while dining at TGI Friday's, plaintiff was charged a different price for beverages served at the bar than she was for beverages served at her table.  No. A-3098-10T2, 2011 WL 5041391, at *1 (N.J. Super. Ct. App. Div. Oct. 25, 2011). The court held that the plaintiff was an aggrieved consumer because she plausibly alleged that the restaurant misled her about the price difference and she sustained economic harm by paying a higher price for the beverage at the table.  *See also Martinez-Santiago v. Public Storage*, 38 F. Supp. 3d 500, 504, 515-16 (D.N.J. 2014) (finding plaintiff plausibly alleged TCCWNA violation where defendant exercised illegal indemnification clause against plaintiff requiring plaintiff to indemnify defendant in a suit that arose as a result of defendant's own negligence). Nonetheless, the New Jersey appellate court later decertified the class in *Dugan* after finding that it is not enough to prove generally that TGI Fridays "offer[ed]" or "display[ed]" menus omitting drink prices without evidence the menus were delivered to the particular members of the class.  *See Dugan v. TGI Fridays, Inc.*, --- A.3d ---, 2016 WL 1136486, at *10 (N.J. Super. App. Div. Mar. 24, 2016)

("Individualized inquiries would be required to determine whether each class member was handed a menu that lacked beverage pricing" because "a server may have forgotten to provide the menu to a customer, or a patron may have told the server a menu was not required.")

Plaintiff here does not satisfy the aggrieved consumer standard.  He does not allege that his personal or pecuniary interests were harmed or that his property rights were adversely affected by the Terms of Use.  He does not allege that he even had a situation arise where he would need to take advantage of some warranty or remedy that is allegedly diminished by the Terms of Use.  And he certainly does not allege that Bed Bath & Beyond attempted to, or in fact did, enforce any provision of the Terms of Use against him or that he was misled to his detriment by the allegedly illegal Terms.  Plaintiff's claim is simply that the Terms of Use exist, they purportedly violate New Jersey law, and that he and the putative class members are entitled to civil penalties as a result.  These allegations do not at all show how Plaintiff is "aggrieved" under the TCCWNA.  Because "liability under [the] TCCWNA only attaches . . .  when there are actually 'aggrieved' consumers," and because Plaintiff has not plausibly alleged that he meets that standard, his Complaint should be dismissed.  *Shah*, 2009 WL 3234594, at *3.

**D.     Plaintiff's TCCWNA Claim Fails Because the Bed Bath & Beyond Terms of Use are Not a Consumer Contract or Notice**

Plaintiff's claims also require dismissal because the Terms of Use are not a "consumer contract."  The TCCWNA applies only to "written consumer contract[s]" or a "written consumer warranty, notice or sign."  N.J.S.A. § 56:12-15. The New Jersey Supreme Court has interpreted "consumer contract" for purposes of the TCCWNA to mean "a written agreement in which an individual *[p]urchases real or personal property*" for personal, family or household purposes.  *See Shelton v. Restaurant.com, Inc.*, 70 A.3d 544, 555-56 (N.J. 2013) (alterations in original) (emphasis added) (relying on the definition of "consumer contract" from the Plain Language Act, N.J.S.A. § 56:12-1, which the Legislature enacted one year before the TCCWNA).  A "consumer contract" includes "writings required to complete the consumer transaction."  *Id.* at 556-58 ("[T]he Legislature enacted the TCCWNA to permit consumers to know the full terms and conditions of the offer made to them by a seller or of the consumer contract into which they decide to enter.").  The TCCWNA, therefore, applies only to statements made "in the course of acquisition of property."  *Id.* at 558 (holding that TCCWNA applied to terms and conditions provided on a gift certificate sold to consumers).

Here, the Terms of Use do not govern the purchase or sale of any property. In fact, the Terms of Use do not reference any specific product sold on the

Website.  Instead, they are a contract that solely governs a visitor's **use of** and **access to** the Website regardless of whether a visitor has in fact made, or intends to make, a purchase.  (Compl. Ex. 1) ("**By using this Site**, you agree to accept these terms and conditions, so please be sure to read them carefully. If you do not agree with our terms and conditions, please **do not use** our Site.") (emphasis added).  In this respect, the Terms of Use are analogous to a licensing agreement governing a website visitor's use of and conduct *on the website* and limiting Bed Bath & Beyond's liability for various activities and failures related *to the website.*

Moreover, the plain language of the TCCWNA contemplates a difference between a "consumer contract" and a "consumer notice."  *See* N.J.S.A. § 56:12-15 (referring to "written consumer contract" **or** "written consumer warranty, notice or sign.").  Because the Terms of Use are a contract, they cannot also be a notice under the TCCWNA.  In any event, if they are a notice, they are a notice about the use of the Website and not about the acquisition of property.  *See Shelton*, 70 A.3d at 558.  Accordingly, because the Terms of Use are not a "consumer contract" given in the course of the acquisition of property or "consumer notice" about the acquisition of property, they cannot provide a basis for Plaintiff's TCCWNA claims here.

### E.      Plaintiff Has Not Plausibly Alleged that Bed Bath & Beyond's Terms of Use Violate a Clearly Established Legal Right

Section 15 of the TCCWNA requires a plaintiff to allege that the consumer contract at issue "includes any provision that violates any clearly established legal right of a consumer or responsibility of a seller . . . as established by State or Federal law at the time the offer is made or the consumer contract is signed or . . . notice or sign is given or displayed."  N.J.S.A. § 56:12-15; *see also Walters*, 2016 WL 890783, at *6 ("A claim for a Section 15 violation is not legally cognizable where the plaintiff failed to establish that the contractual provisions violated a clearly established right afforded by state, federal, and/or common law.").

A violation of a "clearly established legal right" is one where "no reasonable vendor could fail to know that its conduct was prohibited."  *McGarvey v. Penske Automotive Group, Inc.*, No. 08-5610, 2011 WL 1325210, at *4 (D.N.J. Mar. 31, 2011); *see also McGarvey v. Penske Auto Group, Inc.*, 486 F. App'x 276, 281 (3d Cir. 2012) (analyzing cases where plaintiffs had sufficiently stated a TCCWNA claim and concluding that the alleged wrongdoing fell "squarely within prohibited conduct under state or federal law").  Where the violation of a right is unclear, the right is not "clearly established."  *See Wilson v. Kia Motors Am., Inc.*, No. 13-1069, 2015 WL 3903540, at *3 (D.N.J. June 25, 2015) (rejecting plaintiff's TCCWNA argument that defendant's warranty notice violated New Jersey Lemon

Laws because the "violation is ambiguously drawn and not clearly in violation of the TCCWNA").

Plaintiff bears the burden of alleging that a clearly established legal right existed at the time he allegedly viewed Bed Bath & Beyond's Terms of Use and that right was violated. *See Walters*, 2016 WL 890783, at *5 ("With respect to [§ 56:12-15] the consumer bears a certain substantive burden, *i.e.*, to demonstrate a violation of a clearly established right, in order to successfully state a claim under this section."). Plaintiff has not met this burden for the simple reason that he cannot and does not identify any authority applicable to the access to and use of a website or provides that Bed Bath & Beyond is prohibited from, for example, limiting liability or disclaiming warranties relating to its website. Instead, he confusingly and mistakenly relies on other statutes and case law that have never been applied in this context and is in effect inviting this Court to create new law and apply laws that have never before been applied in this way before to the virtual world. While Plaintiff's allegations are certainly creative, they are unsupported by the law. *McGarvey*, 2011 WL 1325210, at *4 (a clearly established law is one that "no reasonable vendor could fail to know that its conducts was prohibited"). For the following reasons, the Court should reject Plaintiff's attempt to extend New Jersey law on (a) products liability; (b) the sale of goods; (c) premises liability; (d)

cyberliability; and (e) exculpatory clauses to website terms of use.

> **1.    Because the Terms of Use do not govern the sale of products, New Jersey Products Liability Law and the Uniform Commercial Code are inapplicable**

As discussed above, the Terms of Use govern a visitor's use of the Website and do not govern the sale of any products.  Despite Plaintiff's argument that his rights "with respect to the products were purportedly governed by a website document entitled 'Terms of Use'" (Compl. ¶ 12), the plain language of the Terms of Use demonstrates otherwise.  The Terms of Use makes this clear: "**By using this Site**, you agree to accept these terms and conditions, so please be sure to read them carefully. If you do not agree with our terms and conditions, **please do not use our Site**."  (Iannicelli Decl., Ex. A) (emphasis added).  In addition to this introductory language, the substance of the Terms of Use also makes this clear:

- **User Information**:  "In the course of **using this Site**, you may provide and we may collect information about you. . . . You can create a user account on this Site that **allows you to access and use certain of its functions and features**,"

- **Accessibility**:  "While we cannot guarantee that all **features and functions of our Site** will be fully accessible . . . we have **designed this Site with accessibility in mind**."

- **Restrictions on the Use of Materials in Our Web Site**:  "You **agree not to copy, reproduce, or modify any portion of the Site**.  This restriction includes copying, reproducing, or modifying any names, trademarks and logos which Bed Bath & Beyond owns or has the right to use."

- **Materials Submitted to Us**:  "[A]ny comments **you submit to us through our Site**, such as remarks, suggestions, ideas, graphics, or other information becomes and remains our exclusive property. . . ."

- **Wedding & Gift Registry; Bridal Toolkit; User Generated Content:**  "The Registry Features, Registry Content, including your Personal Wedding Site, and [User Generated Content] are **accessible by the public**. . . . Be careful and selective about the personal information you disclose about yourself and others and do not disclose sensitive, proprietary or confidential information."

- **Prohibited Conduct**:  "You agree **to use our Site** only for lawful purposes."

(*Id.*) (emphasis added)

If these indications went unnoticed by Plaintiff, the provisions he challenges

also highlight that they apply only to a visitor's use of the Website:

DISCLAIMER AND LIMITATION OF LIABILITY

None of what follows affects in any way our return policy at bedbathandbeyond.com.  If for any reason you are not satisfied with a purchase you make from our Site, please return it.  Instructions on how to do so will be included with your order.  The following, though, is important information about **your use of this Site**.

\* \* \*

BED BATH & BEYOND DISLCAIMS ALL REPRESENTATIONS AND WARRANTIES **WITH RESPECT TO THIS SITE** OR ITS CONTENTS

\* \* \*

26

**BED BATH & BEYOND WILL NOT BE LIABLE FOR ANY DAMAGES OR INJURY . . . THAT ACCOMPANY OR RESULT FROM YOUR USE OF OUR SITE. THESE INCLUDE (BUT ARE NOT LIMITED TO) DAMAGES OR INJURY CAUSE BY ANY USE OF (OR INABILITY TO USE) OUR SITE**

(*Id.* at 3.)   Plaintiff's specious attempt to read these terms as governing the purchase of products or seeking to limit rights under personal injury laws or the Uniform Commercial Code should be rejected.   In fact, contrary to Plaintiff's allegations, the Terms of Use do not at all prohibit customers like Plaintiff from seeking other means of redress for injuries or complaints related to products and actually encourage Plaintiff to return any product with which he is not satisfied. (*Id.*) ("If for any reason you are not satisfied with a purchase you make from our Site, please return it.  Instructions on how to do so will be included with your order.")  Plaintiff himself does not allege that the Terms of Use were used against him or anyone else in that way.  Accordingly, Plaintiff's position that product liability laws and the Uniform Commercial Code apply to the Terms of Use is misplaced and simply unsupported by the text of the Terms of Use.

      2.      **New Jersey law on a business owner's  duty of care to provide a safe physical environment is inapplicable to the virtual world**

Plaintiff alleges that the disclaimer of warranties and limitation of liability provisions in the Terms of Use violate "well-established New Jersey law" that "[Bed Bath & Beyond] owes a duty of care to Plaintiffs to avoid creating an

unreasonable risk of harm."  (Compl. ¶ 20.)  Plaintiff cites case law to support his claim, but these cases address premises liability, not website terms.  *See, e.g.*, *Martinez-Santiago*, 38 F. Supp. 3d at 514 (analyzing limitation of liability provision in storage facility's lease agreement in light of New Jersey law providing a "legal duty to maintain its premises for business invitees"); *Hopkins v. Fox & Lazo Realtors*, 625 A.2d 1110, 1113-17 (N.J. 1993) (finding that real estate broker had a duty of care to business invitees, *i.e.*, prospective buyers, to ensure their safety through reasonable inspection of the premises).[3]

These two cases demonstrate that the law is clearly established with respect to a business owner's duty to reasonably assure the safety of their physical business premises for business invitees.  But this concept has not been extended to a website owner's duty with respect to website visitors[4] and Plaintiff conveniently ignores this distinction.

---

[3] Plaintiff also cites *Marinczyk v. New Jersey Police Training Com'n*, 5 A.3d 785, 789 (N.J. 2010) for the proposition that exculpatory clauses will not be enforced if they are contrary to public policy.  *Marinczyk* concerned a waiver of liability by the Somerset County Policy Academy as a condition of participation in the Academy's training program and has no applicability to the online Terms of Use here.  *Id.* at 786-87.

[4] The New Jersey Supreme Court's decision in *Shelton v. Restaurant.com Inc.*, 70 A.3d 544 (N.J. 2013) does not warrant a different conclusion.  There, the court held that terms and conditions for online gift cards that violated a clear statutory prohibition on expiration dates for gift cards were subject to the TCCWNA because they applied to the actual product sold on Restaurant.com—the

### 3.  FTC and FCC guidelines do not create clearly established legal rights relating to cyberliability

Plaintiff alleges that the Terms of Use violate New Jersey law because they "purport to absolve Defendant of their [sic] duty to protect customers against harm arising from third-party acts."  (Compl. ¶ 43.)  Again, Plaintiff is unable to identify any clearly established law in support of that duty.  Instead, Plaintiff relies on guidelines promulgated by the Federal Trade Commission ("FTC") and Federal Communications Commission ("FCC") on safeguards businesses should consider taking to protect against disclosure of sensitive customer information from third-party hackers.  (Compl. ¶ 45.)  Plaintiff does not allege that the FTC or FCC guidelines are recognized by federal or state law and conveniently omits that the guidelines convey that they are not binding.  *See* FTC, Information Compliance and the Risk of Identity Theft Guidance for Your Business (2004), available at https://www.ftc.gov/system/files/documents/plain-language/bus59-information-compromise-and-risk-id-theft-guidance-your-business.pdf  (stating  that  article

---

restaurant gift certificates and because there is a clear and simple statute that prohibits expiration dates, which the gift cards sold on Resturant.com imposed. Some of the terms at issue were not even displayed until a customer purchased a gift certificate and followed the link displaying the certificate with the printed terms and conditions.  Here, the Bed Bath & Beyond Terms of Use relate only to the use of the Bed Bath & Beyond website.  A visitor to the Website need not purchase anything from Bed Bath & Beyond.com for the Terms of Use to apply. Because the terms in *Shelton* governed a customer's rights with respect to the product they purchased from Restaurant.com, the *Shelton* decision is not instructive on the Terms of Use here.

serves as **guidance** and to "check federal and state laws or regulations for any specific requirements for your business"); FCC, Cyber Security Planning Guide, available at, https:// transition.fcc.gov/cyber/cyberplanner.pdf (describing the article as a "**tool** for small business to create customized security planning guides"). The FTC "guidance" and FCC small business "tool" simply do not amount to clearly established law as required by the TCCWNA.

### 4. The law governing the enforceability of exculpatory clauses is not clearly established

Plaintiff also fails to state a claim that that the exculpatory clauses in the Terms of Use violate clearly established law because New Jersey law is not clear on the enforceability of exculpatory clauses like the ones at issue here.

In New Jersey, the enforceability of an exculpatory clause is determined by analyzing whether: (1) the provision adversely affects the public interest; (2) the exculpated party is under a legal duty to perform; (3) the contract involves a public utility or common carrier; and (4) the contract grows out of unequal bargaining power or is otherwise unconscionable. *Gershon v. Regency Diving Ctr., Inc.*, 845 A.2d 720, 727 (N.J. Super. Ct. App. Div. 2004). Notwithstanding Bed Bath & Beyond's position that the exculpatory provisions at issue satisfy the *Gershon* factors, Plaintiff's position nevertheless fails because New Jersey courts disagree on the enforceability of exculpatory clauses and, therefore, it cannot be said that

the law is "clearly established." *See Wilson*, 2015 WL 3903540, at *3 (citation and internal quotation marks omitted).

For example, some courts have held that "exculpatory clauses in private agreements that do not adversely affect the public interest are generally sustained" under New Jersey law. *Kane v. U-Haul Int'l. Inc.*, 218 F. App'x 163, 165 (3d Cir. 2007). In fact, there is an abundance of cases where courts have upheld exculpatory provisions in contracts. *See Stelluti v. Casapenn Enters., LLC*, 1 A.3d 678, 695 (N.J. 2010) (upholding exculpatory clause in gym membership agreement that disclaimed liability for injuries gym member sustained while using facility); *Designer License Holding Co., v. Res. Club, Ltd.*, No. A-2526-08T2, 2009 WL 4251140, at *3 (N.J. Super. Ct. App. Div. Nov. 24, 2009) (upholding the exculpatory clause at issue and finding the factors in *Gershon* satisfied); *Kane*, 218 F. App'x at 167 (applying New Jersey law and finding exculpatory clause was enforceable); *Asch Webhosting, Inc. v. Adelphia Bus. Sols. Inv., LLC*, 362 F. App'x 310, 313 (3d Cir. 2010) (applying New Jersey Law and finding that exculpatory clause was enforceable because it was "neither adverse to the public interest nor unconscionable."); *Tessler & Son, Inc. v. Sonitrol Sec. Sys. of N. N.J.*, 497 A.2d 530, 532 (N.J. Super. Ct. App. Div. 1985) (enforcing exculpatory clause in contract for sale of fire and burglar alarm systems because it did not adversely affect the

public interest, the exculpated party was not performing a public duty, and the contract did not grow out of unequal bargaining power).

But other courts have declined to uphold exculpatory provisions in contracts. In fact, in *Martinez-Santiago v. Public Storage,* the case cited by Plaintiff on exculpatory clauses, the court recognized that the very same exculpatory provision it found invalid was previously upheld by the New Jersey Superior Court in *Paruta v. Public Storage*.  *See Martinez*, 38 F. Supp. 3d at 512.

This authority confirms that New Jersey law is not "clearly established" with respect to the enforceability of exculpatory provisions.   Because the law on exculpatory clauses is not clearly established, Plaintiff's Section 15 claim under the TCCWNA should be dismissed.  *See Venditto v. Vivint, Inc.*, No. 14-4357, 2014 WL 5702901, at *10 (D.N.J. Nov. 5, 2015) ("Not only does Count Four fail to refer to any particular statutory text, legislative history, relevant precedence or determinative regulatory interpretation to show that the exculpatory provision(s) . . . are unenforceable or otherwise violate any clearly established law, but it also fails to include any *facts* that would allow the Court to otherwise draw the reasonable inference that the exculpatory provision(s) at issue would not be enforced under New Jersey law.").

Thus, for all the reasons stated above, Plaintiff has failed to plausibly allege that the Terms of Use violate clearly established law.[5]

### F. Bed Bath & Beyond's Terms of Use Cannot Violate the TCCWNA Because They Apply Only to the Extent Permitted by Law

Contrary to Plaintiff's allegations, the allegedly offending provisions of the Terms of Use contain clauses limiting their enforceability to the extent permitted by law. This means that if the provisions are illegal under New Jersey law, they do not apply and, therefore, cannot be said to violate a "clearly established legal right."

The New Jersey Superior Court recently addressed this precise issue in *Walters v. Dream Cars Nat'l, LLC*. There, in deciding a motion to dismiss TCCWNA claims, the court examined similar savings clauses in a luxury vehicle rental agreement that limited liability for consequential, special or punitive damages "unless prohibited by law." 2016 WL 890783, at *6-7. Other challenged provisions contained language that the provision was enforceable "where permitted by law." *Id.*

In analyzing the effect of this limiting language, the court stated that "contractual provisions that 'purport only to be coextensive with the laws of' the

---

[5] For these same reasons, Plaintiff's reliance on the New Jersey Punitive Damages Act should be rejected because there is no clearly established law providing that a vendor cannot limit punitive damages in the context of online terms of use.

state, or merely state that they are permitted to the maximum amount or extent as permitted by state law, do not violate a clearly established right.'"   *Id.* at \*6 (quoting *Sauro v. L.A. Fitness Int'l, LLC,* No. 12-3682, 2013 WL 978807, at \*9 (D.N.J. Feb. 13, 2013)).   While recognizing that a provision's language "'might give an inattentive reader the wrong impression about the law, if the reader skips over . . . limiting phrases,' such as 'to the fullest extent permitted by law' or 'as is permitted by law,'" the Court concluded that this possibility is not grounds for a Section 15 violation.  *Id.* (quoting *Sauro*, 2013 WL 978807, at \*9).

Here, Bed Bath & Beyond's Terms of Use state that they are permitted to the fullest extent permissible pursuant to applicable state law and, therefore, like the provisions in *Walters*, they necessarily cannot violate any clearly established right as required for a Section 15 violation.  *See Sauro*, 2013 WL 978807, at \*9 (finding limitation of liability provision containing language that it applied to the fullest extent permitted by law ensured that it comported with the bounds set by state law).

## G.   The Terms of Use Do Not Violate Section 16 of the TCCWNA

In Count II of the Complaint, Plaintiff alleges that language in the Disclaimer and Limitation of Liability section of the Terms of Use violates Section 16 of the TCCWNA.  This claim fails because Section 16 of the TCCWNA does not apply to warranties.  Section 16 of the TCCWNA provides that:

> No consumer contract, notice or sign shall state that any of its provisions is or may be void, unenforceable or inapplicable in some jurisdictions without specifying which provisions are or are not void, unenforceable or inapplicable within the State of New Jersey; **provided, however, that this shall not apply to warranties**.

N.J.S.A. § 56:12-16 (emphasis added). Plaintiff specifically contends that the following language in the Disclaimer and Limitation of Liability section violates Section 16:

> EXCEPTION: IN CERTAIN STATES THE LAW MAY NOT ALLOW US TO LIMIT OR EXCLUDE LIABILITY FOR THESE "INCIDENTAL" OR "CONSEQUENTIAL" DAMAGES, SO THE ABOVE LIMITATION MAY NOT APPLY.

(*Id.* ¶ 90.)

This "exception" language, which appears in a section relating to claims for breach of warranty, clearly relates to damages caused by such breaches and, therefore, falls within the Section 16 exception. In fact, the section in which the language appears is titled "Disclaimer and Limitation of Liability." (Iannicelli Decl., Ex. A at 3). Because the challenged savings language relates to warranties and because Section 16 does not apply to warranties, Plaintiff has not plausibly alleged a violation of Section 16 of the TCCWNA. *See Venditto*, 2015 WL 926203, at *12 (dismissing plaintiff's section 56:12-16 claim where language at issue applied to a warranty).

Plaintiff also targets the following sentence in the Terms of Use as violating Section 16:

> If any provision of this agreement is unlawful, void or unenforceable, it will not affect the validity and enforceability of any remaining provisions.

(Compl. ¶ 90.)  This claim fails for two reasons.  First, this language relates to warranties and matters growing out of warranties and thus it falls into the Section 16 exception for warranty language.   Second and more fundamentally, this language does not invoke Section 16 in the first instance.  As stated by the court in *Castro v. Sovran Self Storage, Inc.*:

> [This language] operates as a severability clause, protecting the remainder of the contract should some portion of it be declared void or unenforceable. . . .  Plaintiff's interpretation of § 56:12-16 suggests that any standard severability clause implicates the statute.  This reading ignores the context the phrase 'in some jurisdictions' creates for the application of the statute and cannot be correct.

114 F. Supp. 3d 204, 213 (D.N.J. 2015).  Accordingly, because this introductory language applies to the warranties and acts only as a severability clause, Plaintiff has failed to plausibly allege that the language violates Section 16 of the TCCWNA.

## V.    CONCLUSION

For each of the reasons stated above, the Court should dismiss Plaintiff's Complaint with prejudice.

Dated:  June 10, 2016             Respectfully submitted,


MORGAN, LEWIS & BOCKIUS LLP

/s/ Christopher Iannicelli
Christopher Iannicelli
502 Carnegie Center
Princeton, NJ 08540-6241
609.919.6623
christopher.iannicelli@morganlewis.com


Gregory T. Parks (*pro hac vice* pending)
Kristin M. Hadgis
1701 Market Street
Philadelphia, PA 19103-2921
215.963.5000
gregory.parks@morganlewis.com
kristin.hadgis@morganlewis.com

*Attorneys for Defendant Bed Bath & Beyond Inc.*